DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Santiago Castillo, Jr., appeals the judgment of the Lucas County Court of Common Pleas, granting summary judgment to appellees Associated Pathologists, Inc., Dr. Daniel Hanson, and Dr. Shaila Fernandes, jointly. We affirm.
 {¶ 2} The following facts are relevant to this appeal. Appellant was employed as a staff pathologist at St. Luke's Hospital from April 1993 until September 2003. As a pathologist, appellant could seek board certification in two specialized areas with the American Board of Pathology: anatomic pathology and clinical pathology. Appellant became board certified in anatomic pathology in 1996. Appellant attempted to become board certified in clinical pathology on three separate occasions, but was unable to pass the board test and subsequently decided to stop pursuing the certification. His lack of board certification in clinical pathology did not preclude him from practicing clinical pathology at St. Luke's.
 {¶ 3} In January 2003, St. Luke's administrators sent appellant and its other two staff pathologists, Dr. Early and Dr. Fernandes, a memo encouraging them to become independent contractors instead of employees. The three pathologists discussed their options and chose to contact Associated Pathologists, Inc. (API), to discuss merging with them and becoming independent contractors to St. Luke's.
 {¶ 4} On January 27, 2003, a representative of API, Dr. Hanson, met with the three pathologists. At this meeting, the pathologists signed an agreement to discuss merging with API and received a sheet that listed non-monetary benefits provided to API employees. Afterwards, API entered into negotiations with St. Luke's to become the exclusive provider of its pathology services. Appellant, Early and Fernandes agreed that Fernandes should be their liaison between themselves and API and that she should attend the negotiation meetings between API and the hospital to look out for their interests.
 {¶ 5} Thus, during the months of negotiations, appellant did not attend any of the meetings between API and the hospital. Appellant spoke to Dr. Hanson once about the negotiations while they were ongoing and asked, essentially, how the negotiations were going, to which Dr. Hanson replied that they were "okay."
 {¶ 6} In early September 2003, API and St. Luke's reached an agreement for API to be the exclusive provider of the hospital's pathology services effective October 1, 2003. The contract did not state that API would hire pathologists currently employed by St. Luke's, but it did state that any pathologist provided to St. Luke's by API would be certified in both anatomic and clinical pathology, commonly referred to as being "doubleboarded." API entered into contracts with Fernandes and Early, who were both doubleboarded, to be a full-time employee and a part-time independent contractor respectively. As Dr. Hanson had learned at some point between the January meeting and finalization of the hospital contract that appellant was not double-boarded, API did not offer a contract to appellant. On September 18, 2003, hospital administrators informed appellant that he would not be offered an employment contract with API and that his employment with the hospital would end September 30, 2003.
 {¶ 7} Appellant filed the instant complaint alleging breach of implied contract, promissory estoppel, and negligent misrepresentation against API and Dr. Hanson, and alleging intentional interference with business against Dr. Fernandes. Appellees filed a motion for summary judgment. In appellant's motion in opposition, he conceded that since Dr. Hanson was acting as an agent for API, Dr. Hanson had no personal liability for breach of contract. The trial court granted summary judgment to appellees on all claims.
Appellant timely appealed the trial court's judgment, raising the following assignments of error:
 {¶ 8} "A. THE TRIAL COURT ERRED IN DISMISSING THE CLAIM FOR BREACH OF IMPLIED CONTRACT AGAINST API, BECAUSE DEFENDANTS FAILED TO SHOW THAT THERE WERE NO MATERIAL ISSUES OF FACT AS TO THAT CLAIM.
 {¶ 9} "B. THE TRIAL COURT ERRED IN DISMISSING THE CLAIM FOR PROMISSORY ESTOPPEL, BECAUSE DEFENDANTS FAILED TO SHOW THAT THERE WERE NO MATERIAL ISSUES OF FACT WITH REGARD TO THAT CLAIM.
 {¶ 10} "C. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE CLAIM FOR NEGLIGENT MISREPRESENTATION, BECAUSE DEFENDANTS FAILED TO SHOW THAT THERE WERE NO MATERIAL ISSUES OF FACT WITH REGARD TO THIS CLAIM.
 {¶ 11} "D. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE CLAIM FOR INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP BECAUSE DEFENDANT FERNANDES FAILED TO SHOW THAT THERE WERE NO MATERIAL ISSUES OF FACT WITH REGARD TO PLAINTIFF'S CLAIM."
 {¶ 12} The appellate court reviews a grant of summary judgment de novo, standing in the shoes of the trial court. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Summary judgment may only be granted when there remains no genuine issue of material fact and, when construing the evidence in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). See, also, Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. In a motion for summary judgment, the moving party bears the initial burden of demonstrating that there are no genuine issues of material facts regarding an essential element of the nonmoving party's case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292.
 {¶ 13} Underlying each of appellant's assignments of error is an assertion that appellees failed to meet their burden of demonstrating that there were no material issues of fact remaining relating to appellant's claims. In a motion for summary judgment, the moving party must meet its burden by specifically referring to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that no material questions of fact remain. Civ. R. 56(C). Once the moving party has met its burden, the nonmoving party then has a corresponding burden to show that there remains a genuine issue of material fact. Dresher v.Burt, 75 Ohio St.3d at 293; see also, Civ. R. 56(E). The burdens borne by each party may not be met by mere allegations or conclusions, but must be supported by specific facts. Id.
 {¶ 14} In his first assignment of error, appellant contends that the trial court erred by not construing the document signed by appellant, Early and Fernandes at the January meeting as a letter of intent and by failing to find it an enforceable contract. The Ohio Supreme Court has held that these "agreements to agree" are enforceable when "parties have manifested an intention to be bound by their terms and when these intentions are sufficiently definite to be specifically enforced. * * * [If] it is found that the parties intended to be bound, the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result."Oglebay Norton, Co. v. Armco, Inc. (1990), 52 Ohio St.3d 232, 236-237
(internal citations omitted).
 {¶ 15} Appellant contends that the letter, combined with other circumstances, created an implied-in-fact contract for employment. To find an implied-in-fact contract, "the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." Legros v. Tarr (1989),44 Ohio St.3d 1, 6-7.
 {¶ 16} The letter at issue here was provided by Dr. Hanson, an API representative, to appellant, Early, and Fernandes at their initial meeting on January 27, 2003. All of the parties at the meeting signed the letter, which stated:
 {¶ 17} "It is our understanding that you wish to engage in further discussions with the goal of joining your practices with Associated Pathologists, Inc. This letter is an expression of our mutual intentions to pursue such discussions and not an agreement to merge our practices unless definitive terms are mutually agreed upon.
 {¶ 18} "In addition, this letter will serve as an agreement that all parties will maintain strict confidentiality concerning all matters involved in the discussions, whether or not a merger is reached."
 {¶ 19} In addition to the letter, appellant points to two other facts that he argues contribute to a finding of an implied contract. First, at the January meeting, Dr. Hanson provided a sheet that listed benefits API offered to its employees. Although the sheet was not in evidence, both appellant and Dr. Hanson testified that it listed the estimated value various benefits to be $36,000, but it did not provide any salary amounts. Second, at some unknown point after the January meeting and while negotiations between St. Luke's and API were ongoing, appellant briefly spoke to Dr. Hanson regarding the negotiations and asked how they were going, to which Dr. Hanson said they were "okay." Appellant asserts this brief exchange demonstrates the parties had a tacit agreement that should API successfully negotiate a contract with St. Luke's, API would hire appellant. In response, appellees contend that this letter does not constitute an implied contract because the terms are not definite enough to find there was a meeting of minds, nor do the other circumstances provide any of the essential terms needed to imply that a contract was formed. In support of their argument, appellees cite various portions of appellant's own deposition testimony to show there had not been a meeting of the minds on any essential aspect of the purported contract. Specifically, appellant testified that there had been no agreement as to pay, work hours, work duties, length of engagement, or even whether appellant was to be an independent contractor to or a partner in API.
 {¶ 20} While a court may fill in the gaps of an otherwise enforceable agreement in order to not frustrate the intent of the parties, a court cannot infer an agreement when the parties have not agreed on any essential aspects of the relationship. Here, the parties had not even agreed on what kind of relationship they might enter into, whether appellant was to be a partner in API or an independent contractor. Furthermore, even if there was a meeting of the minds sufficient to form an implied contract, insufficient information exists to fill in the gaps. We could not infer what kind of arrangement API typically uses, as the facts show that API routinely uses both partnership and independent contractor arrangements; Dr. Fernandes became a full-time employee and partner in API and Dr. Early became a part-time independent contractor. As there is great difference between the nature and substance of a partnership agreement and that of an independent contractor, appellant has not shown that there was a meeting of the minds on the essential elements of the agreement and, therefore, no contract may be implied. Appellant's first assignment of error is not well-taken.
 {¶ 21} In his second assignment of error, appellant contends the trial court erred in granting summary judgment on his claim of promissory estoppel. To establish a claim for promissory estoppel a plaintiff must prove: "(1) a clear and unambiguous promise, (2) made by the employer, (3) which the employer should reasonably and forseeably expect to induce reliance by the employee, and (4) upon which the employee must have actually relied and suffered injury as a result." Miller v.Lindsay-Green, Inc., 10th Dist. No. 04AP-848, 2005-Ohio-6366, ¶ 35, citing Sidenstricker v. Miller Pavement Maintenance, Inc. (Oct. 25, 2001), Franklin App. No. 00AP-1146. See, also, Wing v. Anchor Media,Ltd. (1991), 59 Ohio St.3d 108, 110, quoting Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100, paragraph three of the syllabus.
 {¶ 22} Appellant asserted his claim of promissory estoppel against both API and Dr. Hanson individually. Promissory estoppel is a quasi-contractual claim. It is settled law in Ohio that where an agent enters into a contract on behalf of a disclosed principal, the agent is not personally liable for that contract so long as he is acting within the scope of his authority and acting in the name of the principal. SeeFoster v. Lee Motors, Inc. (1956), 102 Ohio App. 10, 13; James G. Smith Assoc. v. Everett (1981), 1 Ohio App.3d 118. Under this rule, the claim against Dr. Hanson must fail absent a showing that either he was not acting within his capacity as an agent of API or was not acting in the name of API. Appellant contends that Dr. Hanson should be held individually liable because the communications upon which appellant bases the claim were all with Dr. Hanson and he had knowledge regarding appellant's lack of double-boarding. However, as appellee correctly states, since both parties agree that Dr. Hanson was acting in his capacity as an agent of API and the undisputed evidence shows he was acting in the name of API, he may not be held personally liable.
 {¶ 23} Regarding the claim of promissory estoppel against API, appellant claims that the same facts and circumstances that created an implied contract also created a tacit agreement that should API successfully negotiate a contract with the hospital then API would hire all three pathologists from St. Luke's, including appellant. Appellant contends that these facts created a promise of employment, upon which he relied to his detriment. Appellee argues there was no clear and unambiguous promise made by appellee sufficient to sustain a claim of promissory estoppel, nor do the facts show that reliance upon any purported promise would be reasonable. In support, appellee again offers appellant's own testimony in which he states there was no promise made to him by Dr. Hanson and that appellant merely had a perception that API would hire him.
 {¶ 24} "A clear and unambiguous promise is the type that the promisor would expect to induce reliance. * * * [This element] is not satisfied by vague or ambiguous references." Casillas v. Stinchcomb, 6th Dist. No. E-04-041, 2005-Ohio-4019, ¶ 19 (internal citations omitted). In this matter, there is no evidence that API made any promise to appellant. Appellant himself testified that there was no promise but it was his perception that API would hire him. His perception is not sufficient to meet the requirement for a clear and unambiguous promise. Appellant's second assignment of error is not well-taken.
 {¶ 25} In his third assignment of error, appellant claims the trial court erred in granting summary judgment on his claim of negligent misrepresentation against API and Dr. Hanson. A claim for negligent misrepresentation must show that the defendant, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplie[d] false information for the guidance of others in their business transactions." Delman v. ClevelandHeights (1989), 41 Ohio St.3d 1, 4, quoting, 3 Restatement of the Law 2d, Torts (1965), Section 552(1). The defendant is subject to liability for pecuniary loss caused to those who justifiably relied upon the false information if the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. Id. Further, negligent misrepresentation can only be found where an affirmative false statement is made, not merely where statements are omitted. Textron Fin.Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 149.
 {¶ 26} Unlike the contract claims, both Dr. Hanson and API may be held liable for the alleged tortious conduct committed by Dr. Hanson while he was acting within the course and scope of his employment with API.Finely v. Schuett (1982), 8 Ohio App.3d 38, 39. See, also, King v.Magaw (1957), 104 Ohio App. 469, 471; Smith v. L.J. Lewis Ent. Inc.,d.b.a. Action Emergency Ambulance (Sept. 28, 2001), 11th Dist. No. 2000-T0052. The fact that the alleged negligent misrepresentation occurred when Dr. Hanson was working within the course and scope of his employment is undisputed. Therefore, if any negligent misrepresentation were found, both parties may be liable for damages.
 {¶ 27} Appellant argues that Dr. Hanson negligently misrepresented certain facts regarding appellant's prospects of future employment with API. In support, appellant states that because a promise could be inferred from Dr. Hanson's statements and actions that API would hire appellant, a reasonable inference arises that his later statements were misrepresentations. However, we have declined to find such a promise based on the facts presented. Further, appellant has offered no affirmative false statement made by Dr. Hanson that would support a finding of negligent misrepresentation. The only evidence offered by appellant is the telephone conversation in which appellant asked a question about how the negotiations were going, to which Dr. Hanson replied they were "okay." As appellees correctly state, there is nothing to suggest that Dr. Hanson's reply was anything but true. In order to maintain his claim for negligent misrepresentation, appellant must offer evidence of an affirmative false statement. As there is no evidence of such a statement, appellant's third assignment of error is not well-taken.
 {¶ 28} In his fourth assignment of error, appellant contends the court erred in granting summary judgment on his claim of intentional interference with business against Dr. Fernandes. This tort occurs when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into, or continue a business relation with, another, or not to perform a contract with another. The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." Cooper v. Jones, 4th Dist. No. 05CA7,2006-Ohio-1770, ¶ 18 (internal citations omitted). The term "privilege" in this context means a circumstance or justification that would make one's otherwise tortious act excusable. Schultz v. Elm BeverageShoppe (1988), 88 Ohio St.3d 326, 327. See, also, Restatement of the Law, Second, Torts, § 10.
 {¶ 29} Appellant and Dr. Early appointed Dr. Fernandes to attend the negotiation meetings between API and St. Luke's in order to represent the interests of all three pathologists. Appellant offers an affidavit from the pathology lab manager that states in July 2003, the lab manager was involved in a discussion with Dr. Fernandes regarding API when Dr. Fernandes stated that she told API they could have either her, Dr. Fernandes, or him, appellant, but not both. Through this statement, appellant argues, Dr. Fernandes intentionally interfered with his prospective business relationship with API. Appellee contends that regardless of whether Dr. Fernandes actually made such a statement, it does not constitute improper interference. The factors to consider in determining whether interference is improper are:
 {¶ 30} "(a) the nature of the actor's conduct,
 {¶ 31} "(b) The actor's motive,
 {¶ 32} "(c) the interests of the other with which the actor's conduct interferes,
 {¶ 33} "(d) the interests sought to be advanced by the actor,
 {¶ 34} "(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
 {¶ 35} "(f) the proximity or remoteness of the actor's conduct to the interference and
 {¶ 36} "(g) the relations between the parties."
 {¶ 37} Brookside Ambulance, Inc. v. Walker Ambulance Service (1996),112 Ohio App.3d 150, 156, quoting 4 Restatement of the Law 2d, Torts, 26-27, Section 767.
 {¶ 38} It is unnecessary to determine whether Dr. Fernandes' statement constituted improper interference as the uncontested facts show that API did not hire appellant because he was not double-boarded — a reason unrelated to the alleged statement. In order to recover, it is not enough that appellant show an act is improper, he must also show that the act actually or proximately harmed him. Proximate cause may be found where "an original act is wrongful * * * and in a natural and continuous sequence produces a result which would not have taken place without the act." Doyle v. Fairfield Mach., Co. (1997), 120 Ohio App.3d 192,210-211, quoting Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 287. Assuming arguendo that Dr. Fernandes' statement was improper, appellant has not provided any facts from which it could reasonably be inferred that it was the reason API included the double-boarding requirement. To the contrary, the evidence shows that all of API's employment contracts since 1990 included the double-boarding requirement. Additionally, when API presented the first draft of the proposed contract to St. Luke's, it included a double-boarding provision, as did the version the parties subsequently signed. No evidence creates a genuine issue of material fact regarding a causal link between Dr. Fernandes' alleged statement and the inclusion of the double-boarding provision. As appellant has not shown that Dr. Fernandes' statement caused a breach of the relationship between appellant and API, nor has he shown that he was in any way damaged by the statement, appellant's fourth assignment of error is not well-taken.
 {¶ 39} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J.
Mark L. Pietrykowski, J.
William J. Skow, J.
CONCUR.