DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant The Second Calvary Church of God in Christ ("the Church") appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} In early 2003, the Church decided to build an addition to house community events. On April 3, 2003, Church officials met with John and Jane Chomet who did business as J JC Construction Company (collectively "Chomet"). On that same day, the Church and Chomet entered into a contract *Page 2 
with the total price of the addition set at $75,200. Almost immediately, the Church began making payments to Chomet under the contract.
 {¶ 3} Sometime after Chomet entered the contract with the Church, John Chomet approached Joseph Elbert to do the excavating work. Joseph then approached his father, Lorne Elbert, to do a portion of that work. At that time, Lorne owned Elbert Construction Company (hereafter Lorne and his company are collectively referred to as "Elbert"). In October of 2003, Chomet approached Elbert about obtaining a building permit. At that time, Elbert knew that Chomet was not registered as a contractor with the city of Elyria and therefore could not obtain a permit. On October 22, 2003, Elbert obtained a building permit so that Chomet could work on the Church's property.
 {¶ 4} After Elbert and his son completed a majority of the excavating work, Chomet began framing the addition. However, after receiving over $74,000 from the Church, Chomet abandoned the project. As a result, the Church filed suit against Chomet on July 30, 2004. After filing suit, the Church realized that Elbert had obtained the building permit. Thereafter, the Church amended its complaint to include claims against Elbert for breach of contract, fraud, negligence, and unjust enrichment.
 {¶ 5} Prior to trial, the Church dismissed its claims against Chomet based on the fact that Chomet had filed for bankruptcy. The claims against Elbert were then tried before the bench. At the close of the Church's case, Elbert moved for a *Page 3 
directed verdict on each of the claims. The trial court granted the motion and entered judgment in favor of Elbert on each of the claims. The Church timely appealed, raising three assignments of error for review. For ease of analysis, we have rearranged the Church's assignments of error.
 II Assignment of Error Number Three "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S * * * MOTION FOR A DIRECTED VERDICT[.]"
 {¶ 6} In its third assignment of error, the Church contends that the trial court erred when it directed a verdict in Elbert's favor on each of the pending claims. This Court disagrees.
 {¶ 7} Pursuant to Civ.R. 50(A)(4), a trial court is authorized to grant a directed verdict only when:
 "[A]fter construing the evidence most strongly in favor of the party against whom the motion is directed, [the court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
When ruling on a motion for a directed verdict, the court considers the sufficiency of the evidence. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119, reversed on other grounds.
 "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature *Page 4 
of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence." Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68; see, also, Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-85.
 {¶ 8} If the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. Under the "reasonable minds" portion of Civ.R. 50(A)(4), the court is only required to consider whether there exists any evidence of probative value in support of the elements of the non-moving party's claim. See Coleman v. Excello-Textron Corp. (1989), 60 Ohio App.3d 32,40; Ruta, 69 Ohio St.2d at 69.
Breach of Contract {¶ 9} Generally, to prove a breach of contract claim a plaintiff must demonstrate by a preponderance of the evidence that: (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure. Lawrence v. Lorain Cty. Community College (1998),127 Ohio App.3d 546, 548-49. In the instant matter, it is undisputed that Elbert and the Church never entered into a contract. The Church, however, seeks to hold Elbert liable under an agency theory. Specifically, the Church argues that the act of Elbert obtaining a building permit on Chomet's behalf is sufficient to create an agency. We cannot agree. *Page 5 
 {¶ 10} Initially, we note that it is unclear under what theory the Church proposes that an agency existed. In its brief, the Church indicates that agency may be express, implied, or established through estoppel. The Church, however, does not attempt to apply the facts to any of these theories. From its brief, it appears that the Church is arguing that an express agreement between Elbert and Chomet created an agency. The facts do not support such a conclusion.
 {¶ 11} Chomet entered into a contract with the Church well before he contacted Elbert. There is nothing in the record to support a claim that Chomet was working on behalf of Elbert when he signed the contract. Moreover, there is nothing in the contract to indicate that Chomet was acting as Elbert's agent. Finally, it is undisputed that Elbert received no benefit from Chomet's contract with the Church.
 {¶ 12} If anything, the evidence introduced supports a finding that Chomet was the principal and Elbert was its agent. Elbert admitted that it obtained the building permit at Chomet's request. In addition, Elbert conceded that it performed work as a subcontractor under Chomet's contract with the Church. Consequently, the sole evidence introduced indicated that Elbert was at best an agent of a disclosed principal, Chomet. The Church, therefore, has no valid breach of contract claim against Elbert. See, e.g., Castillo v. Associated Pathologists,Inc., 6th Dist. No. L-06-1076, 2006-Ohio-6459, at ¶ 22 (noting that *Page 6 
an agent is not personally liable for the acts of the principal when the principal is disclosed).
 {¶ 13} We also note that the Church presented no evidence that Elbert had not properly performed its duties as a subcontractor. As a subcontractor, Elbert poured the foundation of the addition. No evidence was introduced to suggest that this work was not performed in a workmanlike manner. As such, to the extent that the Church pursued a breach of contract based upon the actual work performed, its claim lacked merit.
Fraud {¶ 14} The Ohio Supreme Court has identified the elements of fraud as: "(1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance." Cohen v.Lamko, Inc. (1984), 10 Ohio St.3d 167, 169. It is undisputed that Elbert made no false representations to the Church. In fact, the Church was entirely unaware of Elbert's involvement with the project until 2004, well after Chomet had absconded with the Church's payments. Consequently, there is no evidence *Page 7 
that the Church relied upon any statements Elbert made. The Church, however, relies on two theories in an attempt to hold Elbert liable.
 {¶ 15} First, the Church relies on an agency theory. As noted above, the evidence does not support the existence of an agency. Consequently, the Church's fraud claim must fail to the extent it relies on such a theory.
 {¶ 16} Second, the Church relies on the fact that Elbert made false statements to the city in its application for the building permit. While this may be true, such statements would be a fraud on the city, not on the Church. Moreover, there is little question that Elbert is subject to punishment for his fraud on the city. The regulations at issue clearly permit revocation of Elbert's license based upon his violations of the ordinance. However, such a violation does not support the Church's fraud claim.
Negligence {¶ 17} To establish negligence, "one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. Initially, we again note that the Church may not maintain a claim of negligence based upon an agency theory, as the evidence does not support such a claim.
 {¶ 18} When Elbert obtained the building permit it permitted construction on property owned by the Church. Consequently, in reviewing this claim, we assume without deciding that Elbert's actions created a legal duty flowing to the *Page 8 
Church. Furthermore, the Church is correct that Elbert's actions were in direct contravention of the Elyria Building Code. Section 1321.05 of the Elyria Building Code permits revocation of a license for "[u]se of registration to obtain a permit for another[.]" As Elbert's actions were prohibited by the Code, we agree with the Church that such actions constitute negligence per se.
 {¶ 19} However, "[n]egligence per se and strict liability * * * are not synonymous." Sikora v. Wenzel (2000), 88 Ohio St.3d 493, 495. Specifically,
 "[n]egligence per se * * * is not equivalent to a finding of liability per se because the plaintiff will also have to prove proximate cause and damages. Negligence per se lessens the plaintiff's burden only on the issue of the actor's departure from the standard of conduct required of a reasonable man." (Internal citations and quotations omitted.) Id. at 496-497.
Therefore, to succeed on its negligence claim, the Church was required to demonstrate that Elbert's actions were the proximate cause of its damages. No evidence to support such a conclusion was presented in the trial court.
 {¶ 20} During his testimony, the Church's pastor Charles C. Brown admitted that the Church paid Chomet over $60,000 prior to the issuance of the building permit. As a matter of law, therefore, Elbert's action in obtaining the permit could not have caused those damages. Subsequent to Elbert obtaining the permit, the Church paid Chomet an additional $12,000. However, the sole evidence introduced at trial indicated that the Church's payment was unrelated to the fact that a permit had been secured. In his testimony, Rev. Brown indicated as follows with respect to the final two payments totaling $12,000. *Page 9 
 "One of the first things [Chomet] said was that he was running short of money, that they weren't going to have a Thanksgiving dinner. * * * And more out of compassion than anything else, I told the chairman, who was also the treasurer, I told him, `Give him the $3,000 for peace sake.'
 "Then [Chomet] called, we talked in December, and he was telling me then * * * how bad things were going, because he said he was sick. And he started the framework, and we have done about a quarter — I told him, no, you haven't done a quarter of the framework, you've done very little. But out of respect to you, your wife and your children, we're going to give you the [$]9385 that you said you are entitled to, but you're not really entitled to it."
Rev. Brown testified that the Church continued to pay Chomet out of compassion. While we find the Church's actions laudable in that it made every effort to assist Chomet in an alleged time of need, there is no evidence that the issuance of the building permit induced the Church to make further payments to Chomet. Consequently, the Church failed to prove that Elbert's negligence proximately caused the Church damage. A directed verdict, therefore, was properly entered on the Church's negligence claim.
Unjust Enrichment {¶ 21} "A successful claim of unjust enrichment requires that: (1) a benefit has been conferred by a plaintiff upon a defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." Chef Italiano v. Crucible Development Corp., 9th Dist. No. 22415, 2005-Ohio-4254, at ¶ 26. *Page 10 
Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." Hummel v.Hummel (1938), 133 Ohio St. 520, 528.
 {¶ 22} The Church argues that Elbert should relinquish any amount of money that Chomet paid him for his work on the Church because Elbert gained that money through his fraud and wrongdoing. First, we note that we have already determined that Elbert did not commit any actionable fraud or wrongdoing upon the Church. Any fraud that Elbert engaged in was directed at the City, not the Church, so the Church cannot use that fraud as a basis for its claim. More importantly, we cannot agree that Elbert unjustly retained the Church's money. The record reflects that Chomet only paid Elbert for the actual work that he performed for the Church. The Church has not presented us with any evidence that Elbert did not properly perform his subcontractor duties, which included pouring the new foundation. If we were to divest Elbert of all the money paid to him, then the Church would still have the benefit of Elbert's work and Elbert would have nothing. We do not believe that such a result would favor the principles of justice and equity. See id. Consequently, the trial court did not err in granting a directed verdict on the Church's unjust enrichment claim.
 {¶ 23} Upon our review, the trial court did not err in granting a direct verdict in Elbert's favor on each of the Church's causes of action. The Church's third assignment of error lacks merit. *Page 11 
 Assignment of Error Number One "THE TRIAL COURT ERRED IN DENYING [THE CHURCH'S] MOTION FOR SUMMARY JUDGMENT INASMUCH AS THE FACTS IN THE CASE ARE NOT IN DISPUTE."
 {¶ 24} In its first assignment of error, the Church asserts that the trial court erred when it denied the Church's motion for summary judgment. During oral argument, the Church withdrew this assignment of error. Consequently, we will not review it. Assignment of Error Number Two "THE TRIAL COURT ERRED IN PROHIBITING ONE OF [THE CHURCH'S] WITNESSES, NAMELY PHILLIP LAHETTA, CHIEF BUILDING OFFICIAL OF THE CITY OF ELYRIA, FROM TESTIFYING AT TRIAL."
 {¶ 25} In its second assignment of error, the Church alleges that the trial court erred when it refused to permit a witness to testify. This Court finds no prejudicial error.
 {¶ 26} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion *Page 12 
standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 27} The Church asserts that the trial court excluded a witness based upon an inadvertent violation of the trial court's separation of witnesses order. Specifically, the Church sought to introduce the testimony of Phillip Lahetta, the current chief building official in Elyria. From the colloquy with the trial court, it is unclear whether the trial court precluded the Church from calling Lahetta. During that session, the court asked the purpose of Lahetta's testimony. The Church responded that Lahetta was "going to describe the procedure for registration. He's going to testify as to three violations of law that were committed by the defendant." Later, the Church indicated that Lahetta would "testify as to whom he has recourse to when things go wrong on a job."
 "Generally, an offer of proof consists of two elements. First, the offering party must inform the trial court as to the legal theory upon which admissibility is proposed. Second, an offering party must show what a witness was expected to testify to and what that evidence would have proven or tended to have proven. The proffer does not need to be as specific as the testimony itself would have been; however, it must be sufficient to allow the reviewing court to roughly determine what impact the testimony would have had upon the final disposition of the case." (Internal citations and quotations omitted.) State v. Lavery (Oct. 24, 2001), 9th Dist. No. 20591, at *5.
Based on the Church's limited proffer, we find that this issue has not been preserved for review. First, the Church failed to assert what testimony Lahetta would give. Instead the Church broadly asserted that it intended to ask Lahetta about registration procedures and possible avenues of recourse. Furthermore, the *Page 13 
Church failed to demonstrate how Lahetta's testimony would impact the disposition of their claims.
 {¶ 28} Assuming arguendo that the trial court excluded Lahetta and did so in error, we find no prejudice resulting from this exclusion. Prior to Lahetta testifying, the Church introduced the testimony of Gerald Klein, the previous chief building official in Elyria. Under the Church's proffer, Lahetta's testimony would have been cumulative of Klein's testimony. The Church proposed that Lahetta would demonstrate Elbert's failure to comply with the Building Code and would describe the process for becoming licensed in Elyria. Klein testified that Elbert had violated the Elyria Building Code through his actions. Klein also testified in detail about the registration process in Elyria for obtaining a contracting license. Furthermore, there is no indication that Lahetta had any personal knowledge of the facts in this matter.
 {¶ 29} In our review, we considered Klein's testimony and found negligence per se based on violations of the building code. As the proffer of Lahetta's testimony adds nothing to this analysis, the Church has failed to demonstrate prejudice resulting from its exclusion. The Church's second assignment of error lacks merit. *Page 14 
 III {¶ 30} The Church's second and third assignments of error are overruled, and the Church's first assignment of error is not considered as it was withdrawn. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, P. J., DICKINSON, J., CONCUR *Page 1