DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, Circuit Solutions, Inc. ("Circuit Solutions"), has appealed from the judgment of the Lorain County Court of Common Pleas, finding in favor of Defendant-Appellee, Mueller Electric, Co. ("Mueller"). This Court affirms.
 I {¶ 2} Mueller, an electrical clip manufacturer, initially approached Circuit Solutions with an interest in outsourcing some of its assembly work. As a result of Mueller's interest, Circuit Solutions sent Mueller multiple quotations and representatives of the two companies engaged in ongoing discussions. Although Circuit Solutions continually expressed an interest in entering into a long-term arrangement with Mueller, Mueller refused. The parties never signed a written contract providing for a long-term agreement. Instead, Mueller simply submitted purchase orders to Circuit Solutions, indicating the number of clips that Mueller needed Circuit Solutions' workers to assemble. Mueller also delivered several of its assembly machines to *Page 2 
Circuit Solutions along with the unassembled parts that its workers would need to perform these "electric clip manufacturing assembly services." Mueller continually submitted purchase orders to Circuit Solutions, indicating the number of clips Mueller needed and the deadlines by which the clips had to be assembled. Each time Circuit Solutions received a new purchase order, it stopped working on the previous order, set that order aside, and commenced work on the new order. So as to avoid a gap in production, Mueller always sent its new purchase orders to Circuit Solutions before the old purchase order expired.
 {¶ 3} Once Circuit Solutions familiarized itself with the assembly process related to Mueller's clips, it moved Mueller's machines to Mexico and began to assemble the clips remotely. Mueller eventually outsourced additional stages of its clip assembly production to Circuit Solutions as a result of its increased efficiency. For instance, while Mueller initially provided Circuit Solutions with turned springs to use in the assembly process, Circuit Solutions started having its own workers turn springs so as to relieve Mueller of that additional stage of assembly.
 {¶ 4} Mueller eventually indicated that it was no longer interested in outsourcing work to Circuit Solutions and stopped submitting its purchase orders. Without the assembly work from Mueller, Circuit Solutions had to close its facility in Mexico. Believing that Mueller wrongfully cancelled a long-term agreement that the two companies shared, Circuit Solutions filed suit against Mueller for breach of contract on May 30, 2003.[1] The trial court held a bench trial and ultimately awarded judgment in Mueller's favor. Circuit Solutions appealed from that judgment on May 11, 2005. *Page 3 
 {¶ 5} On August 21, 2006, this Court issued a decision in this matter, finding that the trial court had applied the wrong burden of proof to Circuit Solutions' claim. We remanded the matter for the trial court to apply the correct standard. See Circuit Solutions, Inc. v. Mueller Elec.Co., 9th Dist. No. 05CA008775, 2006-Ohio-4321. On remand, the trial court once again awarded judgment to Mueller. The trial court determined that: (1) Circuit Solutions failed to prove that the parties had a written contract; (2) without a written contract, the parties' course of conduct controlled; and (3) Mueller was entitled to judgment given the parties' conduct. The court specified that Circuit Solutions was not entitled to damages because those damages depended upon the court finding that the parties had a long-term agreement. Since the parties had no such agreement, Circuit Solutions had no valid claim to damages.
 {¶ 6} On March 30, 2007, Circuit Solutions filed its second notice of appeal in this matter, raising three assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.
 II Assignment of Error Number Two "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DETERMINING, CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, THAT PURCHASE ORDERS ON WHICH [CIRCUIT SOLUTIONS] SOUGHT LOSS OF PROFITS DAMAGES DID NOT CONSTITUTE A CONTRACT BETWEEN THE PARTIES."
 {¶ 7} In its second assignment of error, Circuit Solutions argues that the trial court's finding, that the parties' purchase orders "did not constitute a contract," was against the manifest weight of the evidence. Specifically, Circuit Solutions argues that: (1) the trial court was bound by the law of the case doctrine because this Court already determined in the first appeal that the parties had an "agreement," and (2) Mueller's purchase orders constituted an acceptance of *Page 4 
Circuit Solutions' quotation, which contained specific cancellation terms to which Mueller failed to adhere. We disagree.
 {¶ 8} This Court applies the standard of review set forth in C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, when analyzing a civil manifest weight argument. Huntington Nat'l. Bankv. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 4, citingState v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Wilson at ¶ 24, quoting C.E. Morris at syllabus. When applying the aforementioned standard, a reviewing court "has an obligation to presume that the findings of the trier of fact are correct." Wilson at ¶ 24, quotingSeasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81. This is because the trier of fact is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal, 10 Ohio St.3d at 80. While "[a] finding of an error in law is a legitimate ground for reversal, a difference of opinion on credibility of witnesses and evidence is not." Id. at 81. Thus, in a civil manifest weight of the evidence analysis a reviewing court may not simply "reweigh the evidence and substitute its judgment for that of the [trier of fact]." Wilson at ¶ 40. CompareState v. Thompkins (1997), 78 Ohio St.3d 380, 387 (describing the reviewing court's role in analyzing a criminal manifest weight of the evidence argument as that of the "thirteenth juror").
 {¶ 9} Circuit Solutions argues that this Court already determined that the parties had an "agreement" in its first appeal, so the trial court was bound by the law of the case. The law of the case doctrine prohibits a lower court from disregarding the mandate of a superior court *Page 5 
absent extraordinary circumstances. Nolan v. Nolan (1984),11 Ohio St.3d 1, syllabus. The doctrine provides that "the decision of a reviewing court in a case remains the law of that case * * * at both the trial and reviewing levels" and, upon remand, a trial court "is bound to adhere to the appellate court's determination of the applicable law." Id. at 3. Circuit Solutions points to this Court's use of the term "agreement" in the prior appeal to argue that, upon remand, the trial court could not disregard our determination that the parties did in fact have an "agreement." Circuit Solutions misconstrues this Court's decision in the prior appeal.
 {¶ 10} In its initial decision, the trial court applied a clear and convincing burden of proof to Circuit Solutions' breach of contract claim. On appeal, this Court reversed and remanded the matter for the trial court to apply a preponderance of the evidence standard instead. See Circuit Solutions, Inc. v. Mueller Elec. Co., 9th Dist. No. 05CA008775, 2006-Ohio-4321. Additionally, the Court reversed on two errors of law that the trial court made in its initial decision. Id. at ¶ 9-16 (noting that terms of an agreement take precedence over evidence relating to a course of dealing and noting the proper test to apply to analyze a lost profits claim). While these additional findings were meant to provide guidance to the trial court upon remand, they were not binding. We specifically held that "[a]s to all three of [Circuit Solutions'] assignments of error we reverse and remand the case based on the trial court's incorrect application of the burden of proof." Id. at ¶ 16. Our determination that the trial court applied the incorrect standard of proof concluded the binding portion of our analysis. It would have been impossible for this Court to remand the case on the threshold matter of burden of proof while simultaneously holding that the parties in fact had a binding contract. The remainder of the opinion, which included the "agreement" language Circuit Solutions relies upon, was not strictly necessary to the disposition of the appeal. See Board of Ed. of City Sch. Dist. of Cincinnati v. Walter
(1979), *Page 6 58 Ohio St.2d 368, 384 (noting that dictum is not law of the case). Thus, the only portion of our initial opinion to which the law of the case doctrine applied was the portion instructing the lower court to employ a preponderance of the evidence standard. The lower court was not bound by the law of the case as to the issue of whether the parties had a binding contract.
 {¶ 11} Next, Circuit Solutions argues that the parties had an overarching agreement embodied in the quotation Circuit Solutions sent to Mueller on April 14, 2000 and the purchase orders that Mueller sent to Circuit Solutions in return. Circuit Solutions' quotation included a cancellation provision, which provided as follows:
 "Purchase orders, shall remain in force, in whole or in part, unless written cancellation notice is provided by [Mueller], and [Circuit Solutions] accepts said cancellation by written consent to [Mueller]."
Circuit Solutions argues that its quotation was an offer, which Mueller accepted by submitting a purchase order. Hence, Circuit Solutions claims that Mueller accepted its cancellation terms and breached their contract when Mueller terminated their arrangement without providing written notice of cancellation. The trial court determined that the parties did not have a written contract, so their course of conduct controlled the terms of their arrangement. Based on the parties' conduct, the court determined that Mueller was entitled to judgment. We find that the record contains competent, credible evidence to support this judgment.
 {¶ 12} "[T]o prove a breach of contract claim a plaintiff must demonstrate by a preponderance of the evidence that: (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure." Second Calvary Church of God in Christ v. Chomet, 9th Dist. No. 07CA009186, 2008-Ohio-1463, at ¶ 9, citing Lawrence v. Lorain Cty.Community College (1998), 127 Ohio App.3d 546, 548-49. The elements necessary to form a contract "`include an offer, acceptance, *Page 7 
contractual capacity, consideration[,] * * * a manifestation of mutual assent and legality of object and of consideration.'" Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16, quoting PerlmuterPrinting Co. v. Strome, Inc. (N.D.Ohio 1976), 436 F.Supp. 409, 414. While a true offer vests an offeree with the power of acceptance, an invitation to make an offer simply requests that the recipient of the invitation make a true offer. See Ace Precision Indus., Inc. v. Van DornCo. (May 5, 1982), 9th Dist. No. 10339, at *3-4. "Offers" that do not contain reasonably certain terms will be construed as invitations to offer that "suggest the terms of a possible future bargain." Id. at *3, quoting 1 Williston on Contracts, Section 26-27 (3d Ed., Walter H.E. Jaeger, 1957).
 {¶ 13} Circuit Solutions argues that the price quotation that it submitted to Mueller on April 14, 2000 constituted an offer. Even if we were to agree that this quotation constituted an offer instead of an invitation to make an offer, however, the record supports the trial court's conclusion that Mueller never agreed to Circuit Solutions' written terms. Richard Stone, the president of Circuit Solutions, testified that the April 14, 2000 quotation was just one of several quotations that Circuit Solutions submitted to Mueller in an attempt to secure Mueller's business. He testified that Circuit Solutions amended and resubmitted their quotation several times. For instance, Circuit Solutions submitted another quotation with different terms on May 22, 2000. Consequently, even if the April 14, 2000 quotation constituted an offer, its subsequent revisions support the trial court's conclusion that Mueller never accepted Circuit Solutions' written proposal containing the cancellation provision upon which Circuit Solutions' argument depends.
 {¶ 14} After failing to find a written contract, the trial court looked to the parties' course of conduct and determined that Circuit Solutions was not entitled to judgment based on Mueller's purchase orders because over time the parties "chang[ed] the terms of the prices of the *Page 8 
product, the terms of payment, and the amount of the product ordered[.]" The record contains competent, credible evidence to support this conclusion.
 {¶ 15} Much like an express contract, an implied contract "will be enforced if an offer, an acceptance, and consideration are established."Collins v. Flowers, 9th Dist. No. 04CA008594, 2005-Ohio-3797, at ¶ 53, quoting Brown v. Gen. Tire, Inc. (Feb. 28, 1996), 9th Dist. No. 17161, at *2. The facts and circumstances that give rise to the implicit terms of implied contracts include the customs and course of dealing amongst the parties. Collins at ¶ 53, citing Brown at *1. The record reflects that Mueller submitted purchase orders to Circuit Solutions over an extended period of time. Christopher Franklin, Mueller's former materials manager, testified that each purchase order was meant to cover a specific time period. He explained that Mueller intended each subsequent order to replace the previous order, such that Circuit Solutions would stop working on the previous order each time and begin on the new order. Franklin testified that Mueller would not have continued to submit purchase orders if it knew that Circuit Solutions was retaining the old purchase orders with the intent of holding Mueller responsible for the unfilled amounts on each order. David Stone, Circuit Solutions' vice president, testified that Circuit Solutions' prices increased over the course of its performance. He testified that he would orally relay these price increases to Mueller for approval as they occurred. Finally, Circuit Solutions' administrative accounting assistant, Karla Lobatos Avila, testified that each time Mueller submitted a new purchase order she would begin using the new purchase order number and disregard the prior order number.
 {¶ 16} Circuit Solutions' assembly work progressed over the course of its relationship with Mueller as its prices changed and it added additional steps to the work it performed for Mueller. This evidence supports the trial court's conclusion that the parties' relationship evolved *Page 9 
over time such that their conduct controlled their implied agreements. See Collins at ¶ 53. Rather than one cohesive, implied contract, the parties engaged in a series of separate, implied contracts, each of which replaced the previous one. The trial court noted this when it cited to the parties many different "terms of the prices of the product, * * * of payment, and [of] the amount of the product ordered[.]" There was no evidence that Circuit Solutions ever intended to completely fill all of Mueller's prior orders, many of which Mueller submitted when Circuit Solutions' costs of labor were less expensive. Mueller simply requested Circuit Solutions to perform work as needed, and Circuit Solutions performed. The parties never entered into a contract that required Mueller to cancel in a certain manner in order to avoid a breach. The trial court's decision that Mueller was entitled to judgment was not against the manifest weight of the evidence. Circuit Solutions' second assignment of error is overruled.
 Assignment of Error Number One "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DETERMINING, CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, THAT [CIRCUIT SOLUTIONS] WAS NOT ENTITLED TO RECOVERY FOR ITEMS THAT IT PROVIDED TO MUELLER FOR WHICH IT WAS NOT PAID."
 Assignment of Error Number Three "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DETERMINING, CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, THAT [CIRCUIT SOLUTIONS] HAD NOT PROVEN BY A PREPONDERANCE OF THE EVIDENCE WHAT IT WOULD HAVE RECOVERED UNDER THE PURCHASE ORDERS IT WAS PREVENTED FROM PERFORMING AND WHAT SUCH PERFORMANCE WOULD HAVE COST."
 {¶ 17} In its first assignment of error, Circuit Solutions argues that the trial court's decision that Mueller did not have to reimburse it for certain unpaid billing and tooling expenses was against the manifest weight of the evidence. In its third assignment of error, Circuit *Page 10 
Solutions argues that the trial court's decision not to award it lost profits was against the weight of the evidence. We disagree.
 {¶ 18} The trial court concluded that Circuit Solutions was not entitled to seek damages because it failed to prove its breach of contract claim. Since we have already concluded that the trial court's decision regarding the existence of a contract was not against the manifest weight of the evidence, we similarly conclude that its decision not to award damages on this basis was supported by competent, credible evidence. See Wilson at ¶ 24. Without a proven breach of contract, Circuit Solutions was not entitled to seek damages on that basis.[2]
See Second Calvary Church of God in Christ at ¶ 9 (listing the elements a party must prove to recover damages in a breach of contract action). Circuit Solutions' first and third assignments of error lack merit.
 III {¶ 19} Circuit Solutions' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
 Judgment affirmed. *Page 11 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, J.
WHITMORE, P. J. CONCUR
[1] Although the complaint also included several other causes of action, Circuit Solutions never appealed from those causes of action.
[2] We note that Circuit Solutions brought a single breach of contract claim against Mueller and appealed solely on that basis. While Circuit Solutions' suit against Mueller also involved claims of promissory estoppel and fraudulent conversion, Circuit Solutions never appealed those claims. See Circuit Solutions, Inc. v. Mueller Elec. Co., 9th Dist. No. 05CA008775, 2006-Ohio-4321, at ¶ 6. To the extent that Circuit Solutions attempts to seek damages for unpaid billing and tooling under a separate contractual theory or cause of action, those claims are barred by res judicata and cannot be raised on this appeal. See OhioPatrolmen's Benevolent Ass'n. v. Munroe Falls, 9th Dist. No. 23898,2008-Ohio-659, at ¶ 13-14.