[Cite as *RPTS, Inc. v. FMC Tubular & Equip. Corp.*, 2012-Ohio-397.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

RPTS, INC.

    Appellant

    v.

FMC TUBULAR & EQUIPMENT CORP.,
et al.

    Appellant

C.A. No.     11CA0001-M
                11CA0018-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09CIV0994

DECISION AND JOURNAL ENTRY

Dated: February 6, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}    According to Dante Palange, president of RPTS Inc., Machinery Tool Brokerage Inc. wanted to hire RPTS to transport equipment to FMC Tubular & Equipment Corporation. Because it had not done business with Machinery Tool before, RPTS agreed to transport the equipment only if FMC paid for the transportation. RPTS allegedly faxed a copy of a "quote sheet" to Machinery Tool, which obtained approval from William Huebel, FMC's president, and returned a copy of the quote sheet with Mr. Huebel's signature on it to RPTS. RPTS, therefore, shipped the equipment to FMC. Shortly thereafter, Machinery Tool asked RPTS to transport more equipment for it, which RPTS did after receiving word that FMC would pay for it. When RPTS did not receive payment from FMC or Machinery Tool for either of the deliveries, it sued both of them. FMC moved for summary judgment, arguing that it did not have a contract with RPTS. The trial court agreed, concluding that the language of the quote sheets did not create a

contract. RPTS has appealed, arguing that the trial court incorrectly granted summary judgment to FMC. We reverse because there is a genuine issue of material fact regarding whether Mr. Huebel's signature on the first quote sheet created a binding contract between RPTS and FMC.

## CONTRACT FORMATION

**{¶2}** RPTS's assignment of error is that the trial court incorrectly granted summary judgment to FMC. It has argued that the court incorrectly determined that Mr. Huebel's acceptance of its offers did not create contracts between it and FMC.

**{¶3}** "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper,* 96 Ohio St. 3d 1, 2002-Ohio-2985, at ¶16 (quoting *Perlmuter Printing Co. v. Strome Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976)). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* (citing *Episcopal Retirement Homes Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991)). Whether an offer and acceptance have occurred is a factual question to be resolved by considering all relevant facts and circumstances. *Garrison v. Daytonian Hotel*, 105 Ohio App. 3d 322, 325 (2d Dist. 1995); *see Tersigni v. Gen. Tire Inc.*, 91 Ohio App. 3d 757, 761 (9th Dist. 1993).

**{¶4}** RPTS has argued that the quote sheets it sent to FMC via Machinery Tool were offers that Mr. Huebel accepted. FMC has argued that the documents were merely quotes because they did not state that acceptance of them would result in a binding contract.

**{¶5}** "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 1 Restatement (Second) of Contracts, § 24, p. 71 (1981). "While a true offer vests an offeree with the power of acceptance, an invitation to make an offer simply requests that the recipient of the invitation make a true offer." *Circuit Solutions Inc. v. Mueller Elec. Co.*, 9th Dist. No. 07CA009139, 2008-Ohio-3048, at ¶12. "Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract. . . . [A] buyer's purchase agreement submitted in response to a price quotation is usually deemed the offer." *L.B. Trucking Co. Inc. v. C.J. Mahan Constr. Co.*, 10th Dist. No. 01 AP-1240, 2002-Ohio-4394, at ¶39 (quoting *Dyno Constr. Co. v. McWane  Inc.*, 198 F.3d 567, 572 (6th Cir. 1999)). A price quotation, however, "may be deemed an offer to form a binding contract if it is sufficiently detailed, and if it appears from the terms of the quotation that all that is needed to ripen the offer into a contract is the recipient's assent." *SST Bearing Corp. v. MTD Consumers Group Inc.*, 1st Dist. No. C-040267, 2004-Ohio-6435, at ¶15. "While the inclusion of a description of the product, price, quantity, and terms of payment may indicate that the price quotation is an offer rather than a mere invitation to negotiate, the determination of the issue depends primarily upon the intention of the person communicating the quotation as demonstrated by all of the surrounding facts and circumstances." *Dyno Constr. Co.*, 198 F.3d at 572. "Thus, to constitute an offer, a price quotation must 'be made under circumstances evidencing the express or implied intent of the offeror that its acceptance shall constitute a binding contract.'" *Id*. (quoting *Maurice Elec. Supply Co. Inc. v. Anderson Safeway Guard Rail Corp.*, 632 F. Supp. 1082, 1087 (D.D.C. 1986)).

{¶6}    The first quote sheet indicated that "RPTS is pleased to submit the following quotation for transportation services."  It provided specific details about the pickup location, the commodities to be transported, the type of vehicles that would be used, the pickup and delivery dates, and the price for each of the two requested loads.  After providing some additional terms regarding insurance coverage and finance charges, it contained a signature box, which provided, in all capital letters, that an "authorized signature of approval is required for RPTS to coordinate transportation services as stated in above quote."  Finally, it requested that the recipient "[p]lease fax acceptance to [RPTS's fax number]."  While the quote sheet did not contain a specific delivery address, it did indicate that the delivery would be to Humble, Texas.  Viewing the facts and circumstances in a light most favorable to RPTS, we conclude that there is a genuine issue of material fact regarding whether the quote sheet was an offer.

{¶7}    The next question is whether FMC accepted the offer. The trial court determined that the only evidence RPTS submitted that suggested there was "mutual assent" to the terms of the quote was inadmissible hearsay.  The court, however, ignored the fact that Mr. Huebel admitted in his affidavit that it was his signature on the quote sheet.  While Mr. Palange's affidavit may contain hearsay regarding the reason Mr. Huebel signed the quote sheet and how the signed copy was delivered to RPTS, Mr. Palange's statement that RPTS received a copy of the signed price quote was not hearsay.  Viewing the evidence in a light most favorable to RPTS, we conclude that Mr. Huebel's signature on the quote sheet creates a genuine issue of material fact regarding whether RPTS and FMC had a meeting of the minds about whether FMC would pay RPTS to ship Machinery Tools' equipment to FMC.

{¶8}    Regarding the second, unsigned, quote sheet, the trial court correctly concluded that RPTS's only evidence that FMC accepted it was inadmissible hearsay.  Accordingly,

RPTS's assignment of error is sustained as to the quote sheet that was signed by Mr. Huebel but is overruled as to the quote sheet that was not signed.

CONCLUSION

**{¶9}** The trial court incorrectly concluded that there were no genuine issues of material fact and that FMC was entitled to judgment as a matter of law. The judgment of the Medina County Common Pleas Court is reversed.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
CARR, J.
<u>CONCUR</u>

<u>APPEARANCES</u>:

ROBERT T. TINL, Attorney at Law, for Appellant.

MICHAEL T. CONWAY, Attorney at Law, for Appellee.